v. M. Vincent Murphy, III, Appellants M. Vincent Murphy, III, Appellants M. Vincent Murphy, III, Appellants M. Vincent Murphy, III, Appellants M. Vincent Murphy, III, Appellants M. Vincent Murphy, III, Appellants M. Vincent Murphy, III, Appellants I did want to address, I appreciate the Court's question, but we feel like the jurisdictional argument is even more of a threshold issue for this Court to address. We feel very strongly in our supplemental brief that Alliant did not satisfy the evidentiary requirements with its affidavits that this Court criticized in the Thomasville case. Specifically, to cut straight to the chase, there's none of the criteria in rule of evidence 803, the custodian of the evidence, contemporaneous preparation of the documents, regular course of business and so forth, none of that is satisfied in the case at bar. The affidavits that were submitted by Alliant nowhere state that that was the custodian of the records, nowhere state they're made in the regular course of business and so forth. We objected in multiple briefs, even moved to strike those affidavits and the trial court, district court, simply did not even address the issues that we raised. To compare, Judge Pryor, to the Thomasville case, in that case the magistrate judge wrote a thirty-four page opinion detailing all of the inconsistencies, all of the inaccuracies and all of the contradictions in Alliant's affidavits. By contrast, the district court in this case issued a one-sentence ruling that jurisdiction was satisfied, diversity was satisfied. Yeah, but the district court, the district judge went through and laid out the domicile of all the entities and there was complete diversity on both sides of the V. And evidence to support it. Well, that's the problem, Your Honor. There wasn't evidence to support it and this is exactly what happened in Thomasville, the Thomasville case. And if you will simply follow the principles of law that you laid out in the Thomasville case, there's got to be a custodian of the records, it's got to be contemporaneous and so forth. In the absence of those criteria, the affidavits are not competent and are not sufficient to satisfy diversity jurisdiction. Judge Murphy, you're correct. Judge Story did lay out exactly what he thought the citizenships were, but that was based The problem is that was based on incompetent affidavits. Quite candidly, what the district court laid out was simply a boilerplate recitation of what the aligned plaintiffs laid out. I'd like to emphasize, Judge Pryor, again, the importance It seemed to me that he was entitled to credit all the declarations, wasn't he? I'm sorry? He was entitled, the district court was entitled to credit the declarations that were submitted. No, Your Honor. That's exactly why we're here, and I believe that's why this court issued a jurisdictional question that wasn't satisfied, issued a remand that wasn't properly satisfied, followed by the district court finding that Alliance declarations were not candid. Well, I can't say that I agree with this. I think what your point is is that Alliance supplied the domicile or residents of all its entities to support diversity jurisdiction, and your clients believed, perhaps, that an additional entity might have been involved in the problem you urge us to address is that Judge Story, quote, did not rule that out, and I'm not sure he has to do that. Well, perhaps you may not like the language, so let me rephrase it, maybe more palatable to you. The burden of proof is on the parties claiming diversity jurisdiction to establish with competent evidence, and the problem I'm having, quite frankly, is in Thomasville, you eviscerated Alliance documents and agreed that they were not competent. But this is a different proceeding than the one in Thomasville. Yes, sir, you're correct, but the principles and the facts are almost identical. I understand that, but this is an entirely different proceeding than the one in Thomasville. Judge Story got the parties together and laid out the parameters of how you were going to proceed. That's correct. Okay. I only mentioned Thomasville. I agree, although, by the way, two of the entities are the same. The Alliance 11 entities were in the Thomasville case, and they are also parties to this case, so there is some overlap there, but Judge, I'm just talking about the principles are the same. The evidentiary principles are the same, and quite candidly, I don't know how you can have two such diverse results with the same sort of difference. Your argument is that the affidavits can't, what was presented can't be accepted. That's exactly right. On its face. And I urge you to look at it as carefully as Judge Baberman did, and again, you all did in Thomasville. You looked at it carefully, and you agreed with Judge Baberman, or Magistrate Baberman. If they had, if the affiance had testified before the court, would that be sufficient? No, sir, because it was all hearsay, and they did not have, all their evidence and affidavits is pure hearsay. All right. They don't even make a passing effort. And that's not reliable. Yes, sir. Thank you. I'll reserve whatever time I have left. Thank you. Now I think it's Mr. Wintright's turn. I represent Marilyn Murphy.  As to punitive damages, Marilyn Murphy was, actually, Vince Murphy was the one who was cited for punitive damages in the amount of $1 million under the— And your client for what, $100,000? $100,000, yes. He was cited under subsection F of 51-12-5.1. Right. She would have been under subsection B, and it did not involve the willful—hers did not involve the active tort fees or specification. So, as a result, she had the willful wanton language. The jury answered this by special interrogatories and found sole for him and sole for her. His was $1 million. Hers was $100,000. Now, wait a minute. Those were the punitive damages. That's right, Your Honor. What damages were assessed against Marilyn individually, substantively? It was a fraudulent transfer case, and we lost. Right. A liant was owed about $8.9 million plus federal interest of about $90,000. Right. So, there wasn't a judge. I believe it was $8.9 million plus change, and I don't remember the exact figure. $8.9 million plus $1 million in punitive damages to Vince were assessed to Marilyn. $100,000 of her own were assessed to Marilyn. So, she paid everybody's punitive damages, or she was actually levied. All right. Well, you cited Amstead from the Georgia Court of Appeals, and the point you were trying to make was that punitive damages can only be awarded as additional damages. Right? I'm not sure if it was me or Mr. Kramer, but I'll play by the seat of my pants a bit. As I recall, in Georgia, you have to have general damages of at least $1 or some nominal amount before you can have any punitive damages, and that was a problem for Mr. Murphy because Mr. Kramer's argument is his client shouldn't have been assessed to anything to begin with. I adopted that argument. But he was. Well, no, he wasn't. We were. We had to transfer property over of $8.9 million plus $1 million plus $100,000, and we were levied for that amount of money. In the Eastern District of Kentucky, your client suffered an $8.9 million judgment, correct? That's right. Yes, Your Honor. What's wrong with assessing punitive damages for the underlying fraud, dishonesty, and false divorce that you tried to make? I don't understand. The Kentucky case is a contract case that didn't involve any punitive damages. That was a contract judgment against Mr. Murphy only, and then that became a liance claim, which the district court here in Georgia assessed against Ms. Murphy, so she had to turn over all the property or most of it. She had to turn over $8.9 million plus his punitive damages plus hers. He satisfied the judgment? Completely. Yeah. Suppose we reversed where you left. I have the money. It's fungible, so I'm going to give it back. It depends what percentage or what. We've made other arguments, but if the court just reversed the punitive damages, if it was... It's one thing to reverse. There are two punitive damages issues here, right? Right. One is the $100,000. One is the over $1 million, right? We didn't appeal the $100,000. Right. So if you reverse against the million, then we would be entitled to the million back. Yeah. So your argument about, well, you have to have actual damages, the punitive damages of $100,000, you have a challenge. That's where that really goes. The separate question is the million dollars, over $1 million, your argument is that can only be against Vincent, not against Mary. That's correct. Right. So we're not... It doesn't depend on an argument that there were no actual damages. We adopted the argument, but we have other ones. Yes. It doesn't depend on it. No. No, it doesn't. No. No, it's independent. We would, if the court reversed the million that was assessed against Marilyn that was initially assessed against Vince, we would be entitled to that money back from Alliant. We were over-assessed by $1 million. I don't know if the court has other questions. Other than the jury had a will that we'd be assessed $100,000 and that Mr. Murphy would be assessed $1 million. It goes against the will of the jury. There's a $250,000 limit in Georgia for the type of punitive damages we were assessed for. If you're an active tort feaser, I don't believe there is a limit. We were not an active tort feaser, so we were over-assessed in that count by over $750,000. The end result was Mr. Murphy wasn't punished at all because we had to pay it. And even, you know, Alliant's going to say, well, we needed the arrangement to be the way it was so we could collect the money. The purpose is not to be able to collect the money through the FTA, collect punitive damages through the UFTA, Uniform Fraud and Transfer Act. It's only so that you can be compensated fully. It's compensatory only. No authority. I could not, in my briefing, I worked on this like crazy. I could find nothing that lets, let alone a UFTA case, nothing that lets one party have to pay the punitive damages of another. I'll save the balance of my time for rebuttal. All right. Mr. Netter. Good morning, Your Honors. May it please the Court. Let me start with punitive damages. I'll also address jurisdiction. And then I'd also like to discuss with the Court the prejudgment interest issue that we've raised in our cross-appeal. With respect to punitive damages, there are two distinct issues. One is whether Marilyn and Vincent were subject to an award of punitive damages. And the second issue is how Alliant is supposed to collect an award if it's proper. As my adversaries explained, there doesn't seem to be any dispute as to the $100,000 punitive award entered against Marilyn. We're talking only about the million dollars in punitive damages entered against Vincent. He does argue that there can be no award entered against him because there were no actual damages. But the Georgia Court of Appeals in the Stinchcomb case has rejected that argument already. This Court sitting under Erie is bound to follow Georgia law on that score. So I think that leads us pretty quickly to the question of if a million dollars of punitive damages is properly assessed against Vincent, how is Alliant supposed to collect that award when the whole reason the punitive damages award has been entered is because Vincent has fraudulently transferred all of his money over to Marilyn to prevent Alliant from collecting any of the money? Right. Well, perhaps you trace assets and file a separate claim, but you don't become entitled to an award of punitive damages against Marilyn that the law doesn't technically support. Well, I think it's important to recognize, Your Honor, that the money that was taken to satisfy the punitive damages was not fungible money from Marilyn's general core of assets. Instead, the money that was taken was money that was traced and proven to a jury to have been fraudulently transferred by Vincent to Marilyn for purposes. The whole amount, right, of the transfer, right, plus over a million dollars for punitive damages, right? No. The amount of fraudulent transfers proved to the jury exceeded the $8.9 million that was due under the earlier judgment against Vincent. The claim only goes to the 8 point whatever. Well, that's correct, Your Honor. So what we explained in our briefing was that there are two alternatives. Either the punitive damages can be assessed from the assets that Vincent had transferred to Marilyn in the same proceeding, or you could have a separate proceeding. He was entitled to give her money otherwise insofar as it was not necessary to defeat the creditor's claim. I don't think that that's true, Your Honor. I think that the way that Georgia's Uniform Fraudulent Transfer Act operates is that a creditor is entitled to avoid a transaction to the extent the transaction is made generally to avoid the claims of creditors. The claim, though, is the 8 point whatever. Not a punitive damage claim that doesn't even exist yet. Your Honor, the claim is that there were 20 some transactions that were affected with the fraudulent intent. And that was proved, and the jury found that to be a meritorious claim. The jury further found that Vincent, because of his misconduct, was subject to a million dollars in punitive damages. So I'll repeat in a sense what I had stated earlier, which is that there are two alternatives. One is to have an entirely new proceeding where the exact same facts come in. And a liant has to prove once again that those same transfers that the jury already found to be fraudulent were affected for the purpose... Your claim for punitive damages then reduced to judgment, you know, didn't exist at the time of the transfer. That's true, Your Honor. But under Georgia law, Georgia law is clear that for a transfer to be fraudulent and actionable under GUFTA, the liability doesn't have to exist as of the time of transfer. It has to be that the transfer was made either because of an existing liability or to evade potential future liabilities. And that's what we envision as being the case here. I should respond also to the suggestion that if... Can you hold on just one minute? Of course. I mean, it seems to me as a matter of law, if the, if Judge Pryor's suggestion is correct and the punitive damages assessed against Marilyn could not have been properly assessed because they came into play after the fact, then yes, you have to file another action and ask Marilyn for, or ask a court to award your clients the million dollars in punitive damages that she would have fraudulently gotten. And yes, you've got to go through and re-approve all that, but you file summary judgment and rely on claim preclusion from the original trial here in Georgia, and that's that, right? So on that point, Judge Murphy, I think that the decision of the Georgia Court of Appeals that we submitted through a 28-J letter, an interfinancial midtown, emphasizes that the equitable powers of a court entertaining a fraudulent transfer case are sufficiently expansive to permit the remedy we have here and not to require a liant to keep having to file more and more lawsuits to collect upon claims whenever they arise. It bears mention also that my adversary suggested that if the million dollars is taken from Marilyn, then Vincent suffers no punishment, and the intent of the punitive damages is somehow thwarted. But to that point, I think it's important to recognize that the record, the evidence in the record here establishes that Vincent was funding his lifestyle by using ATM cards and blank checks for the bank accounts that he had given to Marilyn. So, in fact, taking the money that he had fraudulently been using after transferring legal title to Marilyn is the only way to effectuate the jury's interest. And the point of punitive damages to satisfy is not to compensate your client. That's correct, Your Honor. And to the extent that the purpose is to penalize Vincent Murphy, the only way to accomplish that is by taking away the assets that he is using that are in Marilyn's possession, which is what the district court permitted in this case. If I can move on briefly to the jurisdictional issue, Mr. Krimer spoke at length about the Thomasville case. I don't think that great efforts are required to distinguish that case because the ruling of this court in Thomasville was that in dismissing the Thomasville action, Magistrate Judge Baberman did not abuse his discretion. This case arises in the opposite posture because Judge Story found, based on 80 documents, 500 pages worth of documentation, that there was sufficient evidence here. We believe he was certainly entitled to credit the documentary evidence. He was entitled to credit the authenticating declarations. As a result, we don't see any serious issue with subject matter jurisdiction. And the Thomasville case strikes us as fairly irrelevant. On the cross-appeal that we filed with respect to prejudgment interest, this, again, is a matter of Georgia state law. And Georgia, like many states, creates what's effectively a presumption that if a defendant is going to force a plaintiff to proceed to trial, that the plaintiff, if he prevails, is entitled to compensation for the time value of money spent by litigating the case. And Georgia draws a distinction between circumstances in which the amount of the dispute is known beforehand, where the only thing that's required for prejudgment interest is a demand before judgment, and circumstances where nobody knows what the amount... You want a double recovery. Well, Your Honor, I don't believe it's a double recovery under Georgia law. But the judgment is not liquidated, the debt. Not until the verdict. Well, under Georgia... Usually, prejudgment interest is required only where you have a liquidated debt. That's correct, Your Honor. You had that with Kentucky. You had a liquidated judgment. Right, we have a liquidated judgment that we are enforcing against both Vincent and Maryland. Certainly, with respect to Vincent, the other... Our adversaries don't even dispute the fact that the judgment is liquidated as to Vincent. And from our standpoint, that's dispositive of the issue here. If we have a liquidated judgment as to Vincent for $8.9 million, then the prejudgment interest clock is running. Regardless of how the analysis... But her liability is not liquidated. Well, the question of whether damages are liquidated under Georgia law turns on whether the amount in dispute is known. The amount in dispute is disclosed in the complaint here. She has defenses. But this is not a circumstance in which notice is required because Maryland can't know how much she's on the hook for. And that's fundamentally the issue. With respect to this double recovery issue that the judge prior alluded to, I think it's important to note that the federal post-judgment interest on the earlier judgment amounts to $90,000, whereas the statutory prejudgment interest is more than $2 million. So if the court were inclined to believe that there was some Georgia statutory prohibition on double recovery, then a liant has to be given the opportunity to elect which of those two recoveries it wants. It ought not be a difficult decision. When does it start running? The clock ought to start running based on our demand on the date on which the complaint was filed in this case. We believe the claim was liquidated as of when the Kentucky judgment was entered, but our demand was as of the date in 2011 on which the complaint was filed. And at the statutory rate of interest of 7%, that accrues on a $9 million judgment to result in the $2 million interest figure that we have demanded in this case. Under Georgia law, this is not a matter of discretion. There are some states that treat prejudgment interest as discretionary, including within this circuit, Florida. There are some cases that talk about whether it's an abuse of discretion to award prejudgment interest, but because this court is sitting under Georgia law, there's no discretion here. Because we acknowledge that there is a liquidated damages award against Vincent, then the court doesn't have discretion to avoid entering an award of prejudgment interest. With respect to Marilyn, the parties go back and forth. There's a dispute, obviously, as to whether the claim against her is liquidated. We believe that because Georgia courts have found the tort of conversion amounts to a liquidated claim, even though there can be disputes as to the amount that was converted, whether a party had some partial right to possess the property, if that is a liquidated claim, then the parallel claim for a fraudulent conveyance, in our view, ought to be treated as liquidated as well. Now, I know that there are a fair number of other issues that have been raised in the briefing in this case that were not addressed by my adversaries. I'm happy to address any of those issues or any other questions. Thank you, Your Honor. Very quickly, I'll just go point by point in chronological order. Judge Murphy had a point about whether punitive damages might be recoverable because there was underlying fraud, and the answer to that is no. Fraud alone doesn't justify punitive damages. You have to have actual damages, or as the cases refer to it, general damages. The mere fact that it was fraud, unless there's some actual damages that accrue from that fraud, you can't get punitive damages. As a practical matter to Your Honors, what will happen is plaintiffs in those cases will ask for $1 in general damages, and that has been repeatedly held to justify or to support an award of punitive damages. The Alliant plaintiffs did not do that, so there are no general damages, and we just reiterate our point there. The interfinancial case that was submitted under Rule 28 Supplement, again, we addressed that in our responsive letter. That case does not hold in any way, shape, or form to the contrary of what I've just said. It does not say that in the absence of general damages, you can get punitive damages. The holding of interfinancial is simply that in a fraudulent transfer case, a plaintiff can recover both general and punitive damages. That's the holding of the case, or one of the holdings. It has nothing to do with the argument made by Vince Murphy in this case. Number two, one of Your Honors commented, or counsel commented rather, that Alliant submitted 500 pages to establish diversity. Well, that's true. My short answer there is quantity does not equal quality. Those documents, Judge Pryor, I hope you'll please look at it, they just don't cut the mustard. No custodian, I won't repeat it. You heard me, and I urge you to, again, please look at it the way you looked at Thomasville. I agree Thomasville isn't precedent. It's a different case. I'm just talking about the principles. One of you all commented about unliquidated damages. I think it was Judge Pryor. You're absolutely correct about that. There were 20 plus claims. Every one of them was unliquidated. Every one of them was tried. That's why we spent five days in trial going through each and every one of them. They weren't liquidated. We had to get to a jury. All of this is in our briefs. That's when a claim is liquidated, when a jury figures out what it is. Or your other option is to send an unliquidated. Damn, you got that. They didn't do it. So they don't get prejudgment interest quickly. You all talked about double recovery. That's also correct. They got interest on the Kentucky judgment by law. So they just can't double dip there. So the answer then again is that they are not entitled to prejudgment interest. Thank you. Very quickly with respect to punitive damages. Mr. Netter was talking about the idea of filing another proceeding. I have to say in the research we performed, I couldn't find any instance of that. There's no law to support it. But it's an interesting idea. So I wondered what would I do if I had to defend that type of claim? The real issue is with the punitive damages award, the idea is to bury that defendant with that award. Not that the plaintiff will collect it. Hopefully for the plaintiff they can collect it. But the idea is to put one negative one million dollars on his or her balance sheet or whatever the figure would be to deter the conduct. Not to come after the other person that was already paid their award. As to the interest But the jury tried to do that here but they figured the best way to do that was to put the negative on Marilyn's balance sheet because that's Vince's money. They put a negative 100,000 on her. Which you haven't challenged. Which we didn't appeal. So that was 0.1% to 1% of what her net worth was They specifically put over a million on him not her. Only on him, not on her. And that's just a factual point. It's critical because that was a specific finding they made and they just can't assess her for more than $250,000 anyway. It's Judge Story who said that she's liable for it. The Judge Story assessed Judge Story let the plaintiff levy Mrs. Murphy for one million of Mr. Murphy's damages, which is what we thought was error. As to the interest very quickly, the court seems to get it. I think that it is a double recovery. They are seeking something Not necessarily. Well I'll explain why that. There was a demand made for a specific sum of money in the complaint. That was liquidated. I'll explain why that's incorrect. Whether she's liable or not was another proposition. I understand what the court is saying. There is not any provision in the law that allows two forms of statutory interest to accrue against one defendant for the same thing, for the same tort. So you have one form of statutory interest that Alliant demanded. They submitted a proposed judgment document, 475. They wanted one kind of interest, which was Kentucky Judgment Interest. They chose the Kentucky Interest Forum because state law is probably a little more generous. And they also sought a form of Georgia Interest. Now in their briefing, they mentioned conversion and examples where people might have converted the cases involved checks, liquidated sums. Somebody stole X amount of money, of course that's liquidated. Somebody stole a check, of course that's liquidated. It either is or it isn't. It's not an in-between. In this case, it's much different. We had two competing interests at stake. We had domestic relations rights or property settlement rights put against a reasonably equivalent value determination. That was very fluid. Obviously the jury found for the plaintiff very strongly, but they could have found anywhere between $1 and $8.9 million. So I guess I've been negative. I'm going to end my talk. I appreciate the court's time. Thank you. The court will be in recess until tomorrow morning at 9 o'clock. Thank you.